AMERICAN CYANAMID COMPANY, LEDERLE LABORATORIES DIVISION, Plaintiff,

v.

Richard L. ROUDEBUSH et al., Defendants.

No. 76 Civ. 429–LFM.

United States District Court, S. D. New York.

May 3, 1976.

N. Costikyan, Carol Goodman and Helen K. Rosenberg, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York; New York City, for defendants;. Thomas E. Moseley, Asst. U. S. Atty., New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This action has been brought to restrain the Veterans Administration ("VA") from continuing its investigation and enforcing certain findings already made concerning allegedly discriminatory practices of the plaintiff. Plaintiff moves for a preliminary injunction and defendant cross-moves for an order dismissing the complaint.

All government contractors are required by Executive Order 11246 to include in each of their contracts with any agency of the United States a clause which obligates them to take affirmative action to ensure that employees are treated without regard to race, color, religion, sex, or national origin. Power to enforce the order is given to the Secretary of Labor. The regulations promulgated by the Secretary delegate responsibility for enforcement to the Office of Federal Contract Compliance ("OFCC") (41 C.F.R. § 60–1.2).

Specific responsibility for monitoring a contractor's compliance is entrusted to a compliance agency, generally the agency with whom the contractor has the largest aggregate dollar value of contracts (41 C.F.R. § 60–1.3(d)). In the case of Lederle, the compliance agency is the VA. The compliance agency is charged with conducting compliance reviews to determine if the contractor is adhering to the terms of the equal opportunity clause in his contract (41 C.F.R. § 60–1.21) and to investigate complaints filed by employees for alleged discrimination (41 C.F.R. § 60–1.24(b)).

If a complaint investigation or compliance review indicates a violation of the equal opportunity clause, the compliance agency and contractor are directed to conduct informal negotiations to resolve the

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff; Edward

dispute (41 C.F.R. § 60–1.24). If informal negotiations are unsuccessful, the contractor has a right to a hearing (41 C.F.R. § 60–1.24(c)(3)). The hearing is conducted by the OFCC (41 C.F.R. § 60–30.1) before a hearing examiner under the direction of the Secretary of Labor (41 C.F.R. § 60–30.16). The hearing examiner then makes recommendations to the Director of the OFCC or to the Secretary. All parties are given copies of the recommendations and have an opportunity to submit their views (41 C.F.R. § 60–1.26(b)(2)(vi)). If the final decision of the Director or Secretary is that a violation of the equal opportunity clause has occurred, the Director may cause the cancellation or suspension of any contract, or cause a contractor to be barred from further contracts with the government (41 C.F.R. § 60–1.24(c)(3)).

The VA conducted an investigation of a complaint, dated July 9, 1975, made by Mr. Larry Sumner, a black salesman. Mr. Sumner claimed that his termination by Lederle on January 31, 1975 was racially motivated.

The VA issued findings on December 11, 1975 which concluded that Sumner's termination was the product of racial discrimination. It recommended that plaintiff pay Mr. Sumner $5,000 for his discharge and provide him with an employment recommendation that was neutral. In return, Mr. Sumner was to release plaintiff from all claims arising out of his termination. The VA also indicated that it was conducting a compliance review concerning Sumner's allegations that blacks were underrepresented in Lederle's New York metropolitan area sales force.

Plaintiff seeks to vacate these findings and to enjoin all further proceedings, contending that the VA is without jurisdiction to investigate Sumner's allegations and that any findings already made were in violation of Lederle's due process rights to notice and an opportunity to be heard.

Defendants contend that the VA's investigatory recommendations are not final agency action and, therefore, not reviewable, and that plaintiff should be required to exhaust the appeal procedures provided by the regulations. Plaintiff asserts that it should not be required to exhaust administrative remedies since its claims do not raise factual issues involving agency expertise and the administrative appeal procedures are inadequate and subject plaintiff to irreparable harm.

 Preliminary or intermediate agency action is generally subject to judicial scrutiny only upon review of final agency action after all administrative remedies have been exhausted.[1] This not only allows the agency to apply its expertise in developing a factual record, but also promotes efficiency by allowing the administrative proceedings to be completed without premature interruption. Moreover, the need for judicial review may be obviated either by a factual determination or by the exercise of agency discretion.[2] Unless the administrative agency has grossly exceeded its powers, a claim that the agency lacked jurisdiction,[3] or that it failed to provide proper notice of an investigation,[4] will not permit plaintiff to avoid the exhaustion requirement.

There are two methods by which plaintiff can gain administrative review of the VA's initial findings. First, it can put $5,000 in escrow, which would be considered sufficient compliance with the VA's recommendations. It could then appeal and obtain a

1. 5 U.S.C. § 704; *Parisi v. Davidson,* 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Bristol-Myers Co. v. Federal Trade Comm'n,* 469 F.2d 1116 (2d Cir. 1972); *Gellis v. Casey,* 338 F.Supp. 651 (S.D.N.Y.1972).

2. *Parisi v. Davidson, supra; Bristol-Myers Co. v. Federal Trade Comm'n, supra; Atlantic Richfield Co. v. Federal Trade Comm'n,* 398 F.Supp. 1 (S.D.Tex.1975).

3. *Myers v. Bethlehem Shipbuilding Corp., supra; M. G. Davis & Co. v. Cohen,* 369 F.2d 360 (2d Cir. 1966); *International Waste Controls v. Securities & Exchange Comm'n,* 362 F.Supp. 117 (S.D.N.Y.1973).

4. *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Borden, Inc. v. Federal Trade Comm'n,* 495 F.2d 785 (7th Cir. 1974).

full adjudicatory hearing before the OFCC (41 C.F.R. § 60–1.24(c)(4)). In the alternative, plaintiff can obtain review during an enforcement proceeding. If plaintiff refuses to comply with the VA's recommendations, the VA could issue an order to show cause in thirty days why an enforcement proceeding should not be commenced (41 C.F.R. § 60–1.28). Depending upon plaintiff's response during the thirty-day period, the OFCC would decide whether enforcement proceedings were necessary. If the OFCC decided that they were, notice would be sent to plaintiff (41 C.F.R. § 60–30.6), who would then have fourteen days to request a hearing (41 C.F.R. § 60–30.7).

Plaintiff contends that either method of appeal is inadequate because it subjects the contractor to sanctions prior to the hearing. Sanctions result, according to plaintiff, from the requirement that notice of a proposed hearing is sent to government agencies and publication of the proposed sanctions in the Federal Register (41 C.F.R. § 60–1.20(b)(1) and (b)(2)(i)). This advance publicity, plaintiff says, operates as an informal blacklist, affecting a contractor's ability to obtain federal contracts. Plaintiff further claims that the regulations permit suspension of contracts during the pendency of the hearing (41 C.F.R. § 60–1.26(b)(iv)).

The government contends that under the first appeal alternative, compliance and a hearing, neither the notice provisions [5] nor the possibility of suspension pending a hearing [6] would apply. If the enforcement procedure route is chosen, the government claims that application of the notice and suspension provisions is speculative since the OFCC may decide not to enforce the VA's recommendations after the thirty-day show cause period. Equally speculative is the harm caused if notice of the hearing is sent. Further, the regulations permit suspension only if the contractor is in "substantial deviation" from his affirmative action program. The government argues that even if the suspension provision applies, it is uncertain whether the VA's findings regarding Sumner's termination constitute sufficient deviation to allow suspension of plaintiff's contracts. Finally, if the notice and suspension provisions are found to apply to plaintiff, and if their application would result in irreparable injury, plaintiff can obtain a court order against the Secretary of Labor and the Director of the OFCC enjoining application of either provision.[7]

■ The regulations clearly provide a right to an administrative hearing before the OFCC can impose any sanction as a result of the VA's initial finding that Lederle is not in compliance with the equal opportunity clause in its contracts. We find plaintiff's claims that this appeal procedure subjects it to the threat of irreparable injury far too speculative to avoid the requirement that it exhaust its administrative remedies.[8] It is uncertain whether the notice and suspension provisions apply to both procedures by which plaintiff can obtain review of the VA's findings, and if they were to be applied to Lederle, the harm that would result. Moreover, if there comes a time when actual harm is imminent, plaintiff can then seek an injunction in a district court against the proper parties.

Accordingly, plaintiff's motion for a preliminary injunction is denied, and defendants' motion to dismiss the complaint is granted.

So ordered.

---

**5.** Government's brief, p. 14.

**6.** Government's Exhibit A.

**7.** *Crown Zellerbach Corp. v. Wirtz,* 281 F.Supp. 337 (D.D.C.1968). The VA does not notify government agencies of proposed hearings, nor does it have power to suspend contracts.

**8.** *W. E. Dubois Clubs of America v. Clark,* 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967); *Myers v. Bethlehem Shipbuilding Corp., supra,* 303 U.S. at 50–51, 58 S.Ct. at 463, 82 L.Ed. at 643–644; *Gellis v. Casey, supra.*